UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ELIJAH N. WALKER, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:23-cv-00745 |
| PHOENIX LAW PC, | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT**

NOW comes ELIJAH N. WALKER ("Plaintiff"), by and through the undersigned, complaining as to the conduct of PHOENIX LAW PC ("Defendant") as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.,* and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.,* in connection with Defendant's unlawful conduct.

**JURISDICTION AND VENUE**

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of Texas and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Texas.

## PARTIES

4. Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Pflugerville, Texas, which lies within the Western District of Texas.

5. Defendant is a credit repair organization, debt settlement provider, and purported law firm that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 16080 Center Drive, 6th Floor, Los Angeles, California 90045.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In approximately July of 2020, Plaintiff had numerous delinquent obligations which he wanted to address and was seeking out the assistance of various debt relief and credit repair companies.

9. Plaintiff subsequently happened upon the Litigation Practice Group ("LPG"), who offered Plaintiff various services.

10. LPG represented to Plaintiff that, in exchange for Plaintiff making monthly payments totaling $303.67 for 29 months, LPG would get all of Plaintiff's debt invalidated so that they would

no longer be impacting his credit, would get the debts removed from Plaintiff's credit reports, and would get all of Plaintiff's obligations in a position where Plaintiff would not have to pay them back.

11. LPG further advised that Plaintiff would be represented in the event of any lawsuit filed against him, and LPG would provide attorneys to actively defend Plaintiff in the litigation.

12. Plaintiff and LPG entered into a contract for services, and Plaintiff began making his monthly payments.

13. Over the next several years, until early 2023, Plaintiff made his payments designed to go towards LPG's services.

14. However, despite Plaintiff paying tens of thousands of dollars to LPG, LPG failed to provide the services to Plaintiff or otherwise deliver any results for Plaintiff.

15. None of Plaintiff's enrolled obligations were disputed, none of the obligations were invalidated, and Plaintiff was still being sought after for the debts enrolled in LPG's program.

16. Furthermore, because LPG notified Plaintiff's creditors that he was working with LPG, any litigation-related documents went to LPG, not Plaintiff – and LPG routinely failed to represent Plaintiff in multiple debt collection lawsuits filed by Plaintiff's creditors, which led to default judgments.

17. In approximately February of 2023, Plaintiff spoke with LPG about the three years of payments made and no services being provided, at which point LPG advised that Plaintiff would receive a full refund of the payments made.

18. However, this refund was never provided.

19. Instead, Plaintiff's account with LPG was transferred to Defendant without any prior notice being provided to Plaintiff.

20. Upon information and belief, Defendant has a relationship with LPG such that, as LPG deals with allegations of fraud and bankruptcy, certain customers of LPG were transferred to Defendant to continue the "services" being offered so as to further perpetuate LPG's ongoing fraud against consumers.

21. Plaintiff was informed that all of the funds Plaintiff had paid to LPG were transferred to Defendant, and Defendant would begin providing services to Plaintiff.

22. Plaintiff was then charged by Defendant for services, despite Plaintiff never agreeing to use Defendant's services or otherwise receiving the refund of three years of payment.

23. LPG's business practice have received national attention, given the systemic fraud the company perpetrated against consumers for years.

24. Defendant is thus involved in a course of business and scheme resulting in a fraud being perpetrated on Plaintiff and other consumers, as it is perpetuating the fraud undertaken by LPG by continuing to bilk consumers for payments in connection with credit repair and debt settlement services that are entirety fraudulent, were never provided, and which were blatantly misrepresented to consumers, including Plaintiff.

25. Upon information and belief, Defendant was aware of LPG's fraudulent conduct, yet nevertheless agreed to take over accounts knowing that it would continue charging consumers for services that would ultimately never be performed in the manner such services were represented.

26. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

27. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm, denial of the benefit of his bargain, making payments for deficient and nonexistent credit repair services, relying upon

Defendant's representations to his detriment, significant pecuniary loss, as well as a violation of his state and federally protected interests.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

28. Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

29. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

30. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

31. Defendant's represented services in disputing and seeking to remove information from Plaintiff's credit report renders it a credit repair organization under the CROA, as does its conduct in purporting to resolve obligations on behalf of consumers for less than the full balance owed.

32. Defendant is similarly a "person" as contemplated by the CROA.

    a. **Violations of CROA §§ 1679b(a)(3)-(4)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

34. Defendant violated the above provisions of the CROA through its relationship with LPG and efforts to perpetuate the fraud committed by LPG. Defendant directly and indirectly engaged in an act, practice, and course of business that constitutes and results in the commission of, or attempt to commit, a fraud or deception on Plaintiff and consumers in general by agreeing to take over clients from LPG. LPG charged Plaintiff tens of thousands of dollars to do nothing, and Defendant attempted to continue doing so with Plaintiff despite having no permission to provide any services to Plaintiff. Defendant's course of conduct is designed to continue profiting from consumers who have agreed to make automatic payments without any regard for whether those services should continue to be provided or whether LPG adhered to any of the contractual requirements in connection with the consumers over whose services Defendant was taking over. Simply put, Defendant's stepping into the shoes of LPG given the fraud perpetrated by LPG against Plaintiff illustrates its attempt to commit a fraud in connection with the services offered to Plaintiff by itself, as well as its indirect continuation of the fraud and deception perpetrated by LPG.

35. Defendant further violated the above provisions of the CROA through its own fraudulent conduct directed towards Plaintiff. Defendant charged Plaintiff for services it never performed, and did so despite knowing there to be no authorization for the charges assessed by Defendant. Defendant simply took Plaintiff's money, cancelled the agreement, and never returned the funds.

   b. **Violations of CROA § 1679b(b)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged and retained Plaintiff's payment despite not performing, let alone completely performing, the services justifying the retention of such fees and charges.

    c. **Violation of CROA § 1679c**

38. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

39. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

    d. **Violation of CROA §§ 1679d & 1679e**

40. The CROA, pursuant to 15 U.S.C. § 1679d, requires there to be a signed written agreement in place between credit repair organizations and consumers, and § 1679e outlines the requirement that a separate notice of cancellation form must be provided.

41. Defendant violated the above provisions of the CROA by charging Plaintiff absent any written contract exchanged between the parties and failing to provide any of the information to Plaintiff required by the CROA.

WHEREFORE, Plaintiff, ELIJAH N. WALKER, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

42. Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

44. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

45. The carveout for attorneys does not apply to Defendant because, upon information and belief, it is not licensed in the state of Texas, and any "services" provided were not within its scope as practicing attorneys.

    a. **Violations of Tex. Fin. Code §§ 393.201 & 393.202**

46. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines the required contractual language to be included between consumers and credit services organizations.

47. Defendant violated § 393.201 by failing to enter into a contract with Plaintiff for the provision of services.

    b. **Violations of Tex. Fin. Code § 393.302**

48. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

49. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

### c. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305

50. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

51. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

WHEREFORE, Plaintiff, ELIJAH N. WALKER, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

52. Plaintiff restates and realleges paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

54. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

### a. Violations of Tex. Fin. Code § 394.207

55. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

56. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

### b. Violations of Tex. Fin. Code § 394.209

57. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

58. Defendant violated § 394.209(b) through its failure to provide Plaintiff with any contract.

### c. Violations of Tex. Fin. Code § 394.210

59. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

60. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract with Plaintiff.

### d. Violations of Tex. Fin. Code § 394.212

61. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

62. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

63. Defendant violated § 394.212(a)(9) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

e. **Violations of Tex. Fin. Code § 394.213**

64. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

65. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly.

WHEREFORE, Plaintiff, ELIJAH N. WALKER, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: June 30, 2023

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com