# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ELIJAH N. WALKER,<br>*Plaintiff*<br><br>v.<br><br>PHOENIX LAW PC,<br>*Defendant* | §<br>§<br>§   CASE NO. 1:23-CV-00745-DII<br>§<br>§<br>§<br>§ |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DISTRICT COURT**

Before the Court is Plaintiff Elijah N. Walker's Motion for Default Judgment Against Phoenix Law PC, filed August 31, 2023 (Dkt. 9). By Text Order entered September 8, 2023, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

### I.  Background

On June 30, 2023, Plaintiff Elijah N. Walker sued Defendant Phoenix Law PC, alleging violations of the Credit Repair Organizations Act ("CROA"), the Texas Credit Services Organizations Act ("TCSOA"), and the Texas Consumer Debt Management Services Act ("TCDMSA"). Complaint, Dkt. 1. Walker alleges that he contracted with the Litigation Practice Group ("LPG"), which is not a party, to help invalidate his outstanding debt and repair his credit. *Id.* ¶¶ 8-12. He alleges that he made monthly payments to LPG for several years, but LPG failed to provide credit repair services or "deliver any results." *Id.* ¶¶ 13-14. LPG faces many similar claims from other plaintiffs, including in this Court, and filed for Chapter 11 bankruptcy protection

on March 20, 2023. *See In re Litig. Prac. Grp., PC,* 658 F. Supp. 3d 1379 (J.P.M.L. 2023); *Topp v. Litig. Prac. Grp., PC*, No. 6:22-cv-00814-ADA-JCM (W.D. Tex.), Dkts. 18-20.

Walker alleges that his account with LPG was "transferred" to Phoenix Law, he was informed that his previous payments also would be transferred, and Phoenix Law would begin providing credit services. Dkt. 1 ¶¶ 19, 21. Walker alleges that Phoenix Law charged him for its services without his agreement. *Id.* ¶ 22.

Walker served Phoenix Law on July 12, 2023. Dkt. 6. Phoenix Law has made no appearance and has failed to plead, respond, or otherwise defend this case. On August 10, 2023, the Clerk entered default against Phoenix Law. Dkt. 8. Walker now asks the Court to enter a default judgment against Phoenix Law and award him $8,806.43 in actual damages and $2,681.30 in costs and attorneys' fees, plus interest. Dkt. 9 at 3-4.

## II.     Legal Standard

Under Rule 55, a default occurs when a defendant fails to plead or otherwise respond to a complaint within the time required. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). After the defendant's default has been entered by the clerk of court, the plaintiff may apply for a judgment based on the default. *Id.* Even when the defendant technically is in default, however, a party is not entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). There must be a sufficient basis in the pleadings for the judgment entered. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).

After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except as to damages. *United States v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987); *see also Nishimatsu,* 515 F.2d at 1206 (stating that the defendant, by default, "admits the plaintiff's well-pleaded allegations of fact"). But a default "is not treated as an absolute confession by the

defendant of his liability and of the plaintiff's right to recover," and the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu,* 515 F.2d at 1206.

Entry of a default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Under Rule 55(b)(2), a court may hold a hearing to conduct an accounting, determine the amount of damages, or establish the truth of any allegation, but a hearing is unnecessary if the court finds it can rely on detailed affidavits and other documentary evidence to determine whether to grant a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The Court finds that a hearing is unnecessary.

### III. Analysis

In considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012).

**A. Jurisdiction**

When a party seeks entry of a default judgment under Rule 55, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322, 324 (5th Cir. 2001) (citation omitted). Because Walker asserts a claim under 15 U.S.C. § 1679g(a), he invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Walker's claims under state law because they arise out of the same alleged facts such that they "form part of the same case or controversy" as his federal claims. 28 U.S.C. § 1367(a); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) ("Here, both the federal and state claims on the face of the pleadings concern the same core factual issue.").

A federal court may assert personal jurisdiction if (1) the state's long-arm statute applies, and (2) due process is satisfied under the Fourteenth Amendment to the United States Constitution. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). In Texas, the long-arm statute authorizes exercise of jurisdiction over a nonresident to the full extent compatible with federal due process mandates. *Id.* Personal jurisdiction is proper if two requirements are met:

> First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state. Second, the exercise of jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice.

*Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 323 (5th Cir. 1996) (cleaned up). To establish "minimum contacts," the defendant must have contacts giving rise to either specific or general jurisdiction. *Id.* at 324. In making a determination of "fairness," courts consider:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."

*Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987)). Specific jurisdiction exists when (1) a nonresident defendant has purposefully directed its activities at the forum state, and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250 (5th Cir. 2019).

Walker alleges that Phoenix Law is a California professional corporation with its principal place of business in California. Dkt. 1 ¶ 5. Walker alleges that LPG "transferred" his account to Phoenix Law. *Id.* ¶¶ 19, 21. He alleges that Phoenix Law charged him without authorization for services it never performed. *Id.* ¶¶ 22, 35.

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001). Walker alleges that Phoenix Law unlawfully charged him without providing credit repair services. Accepting these well-pleaded facts as true, the Court finds that Phoenix Law purposefully directed its allegedly fraudulent charge to Walker in Texas and availed itself of this forum, and that Walker's claims arise out of this contact. The Court also finds that exercise of jurisdiction over Phoenix Law would not be inconsistent with the United States Constitution and laws or "offend traditional notions of fair play and substantial justice." *Felch*, 92 F.3d at 323. Therefore, the Court has specific personal jurisdiction over Phoenix Law.

**B. Liability**

The Court next considers whether a default judgment is procedurally warranted and the Complaint sufficiently sets forth facts showing that Walker is entitled to relief. *United States v. 1998 Freightliner Vin #:1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).

**1. Default Judgment is Procedurally Warranted**

In determining whether a default judgment is procedurally warranted, courts consider six factors:

> (1) whether material issues of fact are at issue;
> (2) whether there has been substantial prejudice;
> (3) whether the grounds for default are clearly established;
> (4) whether the default was caused by a good faith mistake or excusable neglect;
> (5) the harshness of a default judgment; and
> (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

The Court finds that default judgment is procedurally warranted. First, there are no material facts in dispute because Phoenix Law has not filed an answer or any responsive pleadings. *Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . ."). Second, Phoenix Law's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Walker's] interests." *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (citation omitted). Third, the grounds for default are clearly established. The Clerk has entered default against Phoenix Law, which was properly served and has "failed to appear and participate at all, much less timely file a responsive pleading." *Can Cap. Asset Servicing, Inc. v. Walker*, No. 1:17-CV-1147-RP, 2019 WL 2298703, at *2 (W.D. Tex. May 30, 2019). Fourth, the Court cannot find a good-faith mistake or excusable neglect because Phoenix Law has failed to appear. Fifth, although Walker seeks damages, he seeks only his actual damages and attorneys' fees and costs to which he is entitled, limiting the harshness of a default judgment. Finally, "the Court is not aware of any facts that would obligate it to set aside the default if challenged" by Phoenix Law. *Id.* For these reasons, the Court finds that default judgment is procedurally warranted.

2. **There Is Not a Sufficient Basis for Judgment**

Walker asserts claims under 15 U.S.C. § 1679g for violations of CROA; Texas Financial Code § 393.503 for violations of the TCSOA; and Texas Financial Code § 394.215 for violations of the TCDMSA. Dkt. 1.

a. **Credit Repair Organizations Act Claims**

The Credit Repair Organizations Act provides that any "person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person." 15 U.S.C. § 1679g(a).

6

Walker alleges that Phoenix Law violated:

- § 1679b(a)(3), which prohibits false representations about the services of a credit repair organization;
- § 1679b(a)(4), which prohibits "any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization";
- § 1679b(b), which prohibits a credit repair organization from charging a consumer for a service before it fully performs that service;
- § 1679c, which requires a credit repair organization to provide certain disclosures to a consumer before any contract or agreement is executed;
- § 1679d, which prohibits a credit repair organization from providing services without a written contract; and
- § 1679e, which requires the credit repair organization to provide a cancellation form with its contract.

Dkt. 1 ¶¶ 33-41. He alleges that:

- Phoenix Law is a "credit repair organization" under 15 U.S.C. § 1679a(3) because it "offers its customers the ability to eliminate and resolve their debt issues through [its] myriad services," *id.* ¶ 5;
- Walker agreed to a contract for credit repair services with LPG and paid for its services over several years, *id.* ¶¶ 12-13;
- LPG never provided credit repair services, *id.* ¶ 14;
- LPG "transferred" Walker's account to Phoenix Law, *id.* ¶ 19;
- Walker "was informed" that the funds paid to LPG "were transferred to Defendant, and Defendant would begin providing services," *id.* ¶ 21;
- Phoenix Law charged Walker without his consent, *id.* ¶ 22; and
- Phoenix Law never provided credit repair services, *id.* ¶ 35.

By defaulting, Phoenix Law admitted these facts. *Nishimatsu*, 515 F.2d at 1206.

Walker does not allege what credit repair services Phoenix Law provides or any facts about its communications with him or LPG. He does not identify who told him that Phoenix Law received the funds he paid to LPG and would provide services. Walker alleges that Phoenix Law charged

7

him fraudulently, but in his motion for default judgment, he seeks to recover only for his payments to LPG. Dkt. 9 at 3.

Walker contends that Phoenix Law was "aware of LPG's fraudulent conduct" and is liable under CROA for LPG's conduct because it was "perpetuating the fraud undertaken by LPG by continuing to bilk consumers for payments in connection with credit repair and debt services that are entirely fraudulent." Dkt. 1 ¶¶ 24-25. He argues that the Court should find Phoenix Law "a person who violated the CROA given its role in perpetuating LPG's fraud" and award damages in the amount he paid to LPG as the credit repair organization under CROA. Dkt. 9 at 2-3.

As mentioned above, facing similar claims from many other clients, LPG filed for Chapter 11 bankruptcy protection on March 20, 2023. Since then, plaintiffs alleging similar facts have asked courts to hold Phoenix Law or a second firm – Oakstone Law Group, PC – liable for LPG's alleged fraud at least three times. In all three cases, the court has rejected this theory of relief, finding that the plaintiff did not show the law firm had a sufficient connection with LPG to render it liable for payments made before transfer. *See Hutchins v. Oakstone L. Grp.*, No. 2:23-cv-00802-WBS-JDP, 2024 WL 494478, at *4 (E.D. Cal. Feb. 8, 2024) (denying motion for default judgment without prejudice); *Ademosu v. Phoenix L. PC*, No. C23-5404 BHS, 2023 WL 7156158, at *2 (W.D. Wash. Oct. 31, 2023) (finding that plaintiff "provided no authority for his assertion that Phoenix Law's 'connection to LPG's fraud renders it liable' to him for a refund of the amounts he paid to LPG"); *Williams v. Phoenix L. PC*, No. 3:23-cv-05437-TMC, 2023 WL 9001126, at *1 (W.D. Wash. Dec. 28, 2023) (dismissing case without prejudice after court denied a motion for default judgment and plaintiff failed to file "a revised damages calculation or a new motion explaining his liability theory").

Walker asserts that, by accepting the transferred account, Phoenix Law was "stepping into the shoes of LPG" and continued "the fraud and deception perpetrated by LPG." Dkt. 1 ¶ 34. But he pleads no facts about LPG and Phoenix Law's relationship except the transfer of his account and does not describe how Phoenix Law knew of LPG's fraud. Walker "does not identify a specific theory of joint liability to support his damages request, and even if he had, the factual allegations in the complaint lack sufficient detail to allow the court to draw a reasonable inference that [Phoenix Law] is legally responsible for LPG's unlawful acts." *Hutchins*, 2024 WL 494478 at *3. The Court finds that Walker has not shown a sufficient basis for judgment on his CROA claim against Phoenix Law based on LPG's alleged conduct.

  b. **State Claims**

Walker also asserts claims under the Texas Credit Services Organizations Act, alleging that Phoenix Law violated Texas Financial Code:

- § 393.201, which describes the requirements of a credit services contract;
- § 393.202, which requires a contract for credit services to include a notice of cancellation;
- § 393.303, which prohibits a credit services organization from charging a consumer before performing services without a surety bond; and
- §§ 393.304 and 393.305, which prohibit the same conduct as 15 U.S.C. § 1679b(a)(3-4).

Dkt. 1 ¶¶ 46-51. Walker also asserts claims under the Texas Consumer Debt Management Services Act, alleging that Phoenix Law violated Texas Financial Code:

- § 394.207, which prohibits a provider of a debt management service from engaging in false or deceptive advertising;
- § 394.209, which describes the requirements of a debt management services contract;
- § 394.210(c), which prohibits a debt management services provider from imposing fees or charges without a debt management service agreement in compliance with § 394.209;

- § 394.212(a)(9), which prohibits a provider of debt management services from engaging in "unfair, deceptive, or unconscionable act[s] or practice[s] in connection with a service provided to the consumer"; and
- § 394.213, which requires a provider of debt management services to manage client money properly.

Dkt. 1 ¶¶ 55-65.

Walker relies on the same allegations for his state claims against Phoenix Law, and again offers no facts that would permit the Court to find Phoenix Law liable for LPG's alleged fraud. Walker has not shown that he is entitled to a default judgment on his claims under Texas law.

## IV.   Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY WITHOUT PREJUDICE** Plaintiff Elijah N. Walker's Motion for Default Judgment Against Phoenix Law PC (Dkt. 9).

It is **ORDERED** that the Clerk **REMOVE** this case from this Magistrate Judge's docket and **RETURN** it to the docket of the Honorable District Court.

## V.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. See *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 17, 2024.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE